May it please the court, my name is Mark Maron. I have the pleasure this morning to represent Danzel Stearns. I'm sure my pleasure is much greater than his was. He obviously was a pre-trial arrestee who was picked up at a county jail in Colorado Springs on a warrant to return to New Albany, Mississippi, which as the crow flies or even by Google Maps would have been a 16-hour trip. Instead, the private for-profit prisoner transport company, the defendant in this case, Inmate Services Corporation, made that into a marathon of over almost eight days as it went westward, not eastward, hitting almost every state between Colorado and in the Pacific Ocean, all the way up to Oregon, Washington, back down through California, Nevada. Eventually, after coming very close to where he was originally picked up, deposited Mr. Stearns back in New Albany on a minor drug charge. The conditions of confinement were described by Mr. Stearns as hell. He was in a van, which was supposed to be a maximum of 12 people, had 17 people at times, and manacles, shackles, waist chain throughout, sitting up except for brief periods of time when the van driver exercised discretion to stop for rest stops so that people could get off the vehicle to use a bathroom someplace. There were no restroom facilities on the van, neither were there any sources of water other than what might have been distributed at the whim of the drivers to those people who were incarcerated in the van. He wore his same clothes, which everybody did during the course of their transports, without an opportunity really to get any kind of sanitation whatsoever, to wash. As he got dirtier and dirtier, as you can imagine, during that transport without an opportunity to, after using the restroom when he was permitted to, to even wash his hands or brush teeth or anything of that sort in uncomfortable positions without an opportunity to exercise in any way whatsoever, to lie down to sleep. In short, it was the most inhumane type of incarceration one could imagine, certainly not tolerated in any institution in which convicted prisoners would be incarcerated. And unfortunately, this case, when it went to the district court, was decided by a magistrate on summary judgment with a recommendation that it be dismissed. And summary judgment was granted. That recommendation was adopted by the district court judge. And we believe that the wrong standard was used, that the same standard that might be imposed on a convicted prisoner under the Eighth Amendment, as opposed to a more liberal standard appropriate for a pretrial detainee, such as Mr. Starnes, which would be... Do you have some... Is the Eighth Circuit law insurmountable on that issue for you? It's not insurmountable at all, Your Honor. Why not? We think that is, in fact, the present law, or will be the present law in the Eighth Circuit. We think the Ingram case, which concededly was vacated, presaged where the Eighth Circuit is going. We think that your case in Morris v. Zephry, even though it didn't specifically adopt or specify the objectively unreasonableness standard, dealt with a situation where a gentleman was transported for only 90 minutes under conditions which admittedly were inhospitable and inhumane, but certainly not at the level that Mr. Starnes experienced. We think that pretty much indicates that the Eighth Circuit will go the way of the Seventh Circuit, the Ninth Circuit, the Second Circuit, when it has an opportunity. We hope that this is that unreasonable standard. Haven't we already done it in the Whitney case? Footnote 4, where we said that the Kingsley case was an excessive force case. This is a deliberate indifference case. Therefore, we're applying deliberate indifference. Well, I think that the distinction between excessive force and conditions of confinement has been obliterated in those circuits I just previously mentioned. And I think that even if you look back at Bell v. Woolfish, which is the Supreme Court's decision on this case back in, I think, 1972 out of Manhattan, the issue there was conditions of confinement and the Fourteenth Amendment was applied. Wouldn't we have to ignore, though, Whitney, which said that Kingsley is just an excessive force case? I mean, it seems to me like Kingsley, maybe it doesn't have a lot of reasoning. But Whitney, even though it doesn't have a lot of reasoning, seems to bear on this question. Well, if I may, I'll just get to our specific discussion of Whitney, Your Honor. You're not thinking of Wilson v. Sider, no? I think it's a Whitney case. Let's see. Not Whitnack. Let me just... Yeah, it's Whitney. Let me give you the site. I'm going to get to my... It's 887 F. 3rd 857, footnote 4. And I can read it to you. But Whitney didn't purport to resolve that standard. And I'm referring to our response brief at page 7. But in contrast, the decisions in Castro and Darnell did expressly purport to resolve that issue. And we dealt with that in our opening brief. I think that in... I mean, all the other cases that have been cited are distinguishable. Wilson and Whitnack. So I don't think you're bound by a potential reference in a case that didn't deal with the conditions of confinement. Certainly the trend, and I think it's the intelligent approach to a pretrial detainee's conditions, should militate in favor of recognizing that these conditions to which Mr. Starnes was subjected are not tolerable. If we do go there and consider it, as you say, can we look at an overall circumstances? It seems to me that the Supreme Court has also suggested that there needs to be one deprivation of some type of basic human need, and that we can't look at the totality of his trip, for example, in determining whether or not this meets a standard. Well, I think I just have to quote your own words back to you, Your Honor. In the Morris versus Zephry case, what you said there was that when considered separately and in isolation, Morris's allegations of the unsanitary conditions of the cage, a degree of discomfort experienced by Morris, or the humiliation and degradation suffered by him may not appear to state a constitutional violation. But Morris did not experience these conditions in isolation. Morris was a presumed innocent pretrial detainee. And then further, exigent circumstances did not exist. And other transportation options apparently did exist, based on the totality of the circumstances. And according to Morris, Morris's allegation says, true, as we must, we conclude Zephry's decision to transport Morris in this manner transgressed today's broad and idealistic conceptions of dignity, civilized standards, humanity, and decency. So there's no specific one point that one looks at. But if one were to say, OK, Mr. Starnes, what was the deprivation that you suffered that was so extreme? Well, take water. In the Hardeman case, which we cited, which is from the Seventh Circuit and was decided after this case was fully briefed, it was a question of insufficient water for a three-day period, which was not sufficient for both drinking and sanitation. Clearly, that was the only issue there. Clearly, that's the case here. He got just a little water for drinking, no water for sanitation. No face washing, no private area washing, no hand washing even before and after meals or using the restroom. So if you just looked at the water, you would find that basic. We found that the ability to sleep is a requirement that is a basic human requirement. Now, to say that, well, Mr. Starnes acknowledged that he was able to get an occasional cat nap as he was transported during the eight days, continuous transport during those eight days, that that was sufficient sleep because he slept. Well, of course, one sleeps, one closes one's eyes. But whether that gets to the cleansing that normally we require when we get into deep sleep and rejuvenate our bodies is another matter entirely. And he was deprived of that. And it was certainly conceivable, easy, easy for the defendants in this case, where they're not worried only about profit, to make arrangements to stop overnight at county jails, where they were picking up and discharging prisoners throughout, and let the prisoners get off the van, spend a night, as other prison transport companies do, as the Marshal Service does, spend a night and then get a shower, change their clothes, do something that will alleviate these very harsh conditions, which clearly are objectively unreasonable and punishment because they don't serve a legitimate governmental goal in this case. The proper goal was to get Mr. Starnes from one place to the other, and he could have been transported more directly. And certainly with less pain and suffering that he endured. Maybe it wasn't lasting. Maybe the infection that he got did resolve. Maybe the chafed skin that resulted as a result of this trip did resolve and wasn't permanent. But nonetheless, that's pain. And it's accordingly punishment because there were reasonable alternatives. So I think this case could be resolved with the application of the proper or more current standard, which we believe this circuit either has indicated it's going to explicitly adopt or will now and should hopefully explicitly adopt. Can I ask you one question before you finish? The district court, the magistrate judge, analyzed this case under three prongs. Excessive force, inadequate medical care, and conditions of confinement. As I understand your argument, we're just talking conditions of confinement. You're not arguing excessive force. You're not arguing inadequate medical care. That's correct, Your Honor. Okay. And I'd like to reserve the floor. Well, just a real quick follow-up. The excessive force, wasn't there a claim about the shackles and things being too tight? Is that an excessive force claim, though, or is that really a condition of confinement? That was abandoned as an explicit excessive force claim. Thank you. Thank you. Thank you. May it please the court. Counsel, I'm Mark Mayfield, and we represent Inmate Services Corporation in this matter. I want to somewhat, I came with some points to address, but I think that the questions have led me to believe that there are a couple of points that are more important than others that I want to get to. But I want to make one, just a couple bits of introduction and correction. With respect to Mr. Stearns, I heard it referred to as a minor offense. It was a felony drug charge that Mr. Stearns was later convicted on. He was charged. He had a warrant for his arrest in Mississippi. He ends up going to Colorado after that, and then he is brought back from Colorado. Just for the purpose of the court's understanding, and it may already be clear, but with respect to the transport of these persons, you don't have everybody in one place. It just so happened that Mr. Stearns and another person by the name of Jackson were picked up at the same place. But you have to go to the different jails to pick up people. There is some testimony that at times there were more people on there than the van would hold in terms of the seating. However, all of that is part of the variance in these. You have people that are continuously picked up, while others are dropped off at places along the way, and that's what determines the route that ends up being taken. I want to address first, we talked about, I heard a lot of things in what we talked about previously, but one thing that not a lot of time was spent on was the fact that we have some precedent, Bell v. Wolfish, that helps establish this. Our position has been throughout that we don't have to get to Kingsley, either because of the Whitney decision or because it's simply unnecessary because of the court in its thorough analysis in which it addressed conditions of confinement amongst the excessive force and the deliberate indifference with respect to medical needs. The court addressed these objectively with the one objective fact that's pretty important, and that being time, that this was an eight-day trip. And so I did find in looking through this and talking about these conditions, footnote number 19 to Bell v. Wolfish I thought was pretty interesting because it referred to a case by Justice Frankfurter in which he made the statement that figuratively all discomforts, I'm paraphrasing, all discomforts can be considered to be punishment. I think that's the circumstance that we have in this instance. I think that's part of the reason why there is a danger in getting to sort of an amorphous overall conditions type of analysis. What standard do you think should have been applied with respect to the conditions of confinement claim? Your Honor, the position we've taken is that it has to be an extreme deprivation that creates a substantial risk of serious harm, and that that's measured as being objectively unreasonable, whether it's objectively unreasonable or not. So you agree it's the objective standard? That is one part of it. There's also a subjective part to deliberate indifference analysis, Your Honor. Are you saying it has to be objectively, not deliberately? You know, Judge, in Kingsley the court sort of, and I realize it was an excessive force case, but in Kingsley they broke out the question of, well, did they intend the particular harm, and then they got into the objective aspect of it. From what I have seen with respect to Bell, there is this reference of an objective part of the standard, but there's objective and subjective. You don't have the same thing as you do in an excessive force case because in excessive force there's this act. There are typically acts that lead to whatever consequence it is. You're pushing someone or you punch or kick someone. So are you saying deliberate indifference? Is that the standard that you see ultimate? Yes, Your Honor. I apologize. And upon what line of cases do you support that a pretrial detainee's claim should be viewed for deliberate indifference? Right, Your Honor. I would talk and just make reference to a couple that address that, and those would be Wittnack v. Douglas County. That was a case that was relied on primarily by the district court. You've got Smith v. Copeland. That's actually a 1996 case, and one of the reasons that I thought Smith was important is because it makes reference to Bell. It makes reference to the fact that there's a lighter standard under the 14th Amendment than there is under the 8th Amendment, but it still allows for the application of the deliberate indifference standard. And why doesn't Kingsley play any role in this? Is it because of your answer to Judge Malloy that there is some kind of different kind of intent in the act of harming or using force? I think, Judge, first of all, the language of Kingsley that is used by these other circuits to address this question is merely language that it's using to try to— it's not part of the holding itself. It is part of the dictum of the case. But yes, and I want to make sure that I get to this point of it, and that is that you still, with Kingsley, you don't— and I'll use sleep as a for instance. Well, how do you know how much someone has slept? And how do you apply an objective unreasonableness standard with respect to sleep? And so that's where I think it is dangerous to take Kingsley and try to strap it on to a conditions of confinement case. Well, what do you make of this language in Kingsley? The Supreme Court said, the bail court applied this latter objective standard to evaluate a variety of prison conditions including a prison's practice of double bunking. In doing so, it did not consider the prison officials' subjective beliefs about the policy. Doesn't that sound an awful lot like an objective standard is to be applied to a conditions of confinement case? Your Honor, it does. I can see where the court could come to that conclusion. However, I think that may be reached too far, especially when you consider the prior Eighth Circuit cases. On this point, I realize you've got the Supreme Court and the Eighth Circuit, but we do have a pretty considerable body of law in this circuit that really helps provide some guidance with respect to conditions for whether it's governmental or it's private persons that are dealing with prisoners. You've got this guidance. And from what I understand of the argument that's being made by plaintiffs is that they want to undo all of that. They suggest that Wittnack, for instance, is outdated. And the fact is Wittnack follows the standard. It follows bail. And you can see it followed in the Smith v. Copeland case as well as the Owens v. Scott County case. I think I was going to get to that one a moment ago, and I wanted to mention that one as kind of the third case in the realm that supports the deliberate indifference standard. Counsel, to throw this out, so you've cited a lot of case law going back to 1996 on deliberate indifference, and I found a lot of that case law as well, and you cited some of it in your brief. Is there anything post-Kingsley other than Whitley? Whitley does mention that we treat excessive force differently. That's the implication of that footnote. But is there a actual conditions of confinement deliberate indifference case post-2015? None in the Eighth Circuit that we identified. So it's really Whitley is the key there. That is the only case that we have found. Obviously, Ingram started down that road, but Ingram with a court that's seemingly different, it was actually vacated. The second point that I would like to switch, with respect to the totality of the circumstances, in looking through the case law, and I went back and looked in Morris v. Zafari, went back and looked to see whether Wilson v. Cedar was discussed in any of the briefing in Morris v. Zafari, and found that it wasn't because I was curious, and I think it belies this point. Of course, the district court referenced Wittnack as applying Wilson v. Cedar in the mutual enforcing effect of applying it in a claim of overall conditions. Do you think that is there anything to the difference between the 14th Amendment and the 8th? In other words, Wilson was an 8th Amendment case, right? Right. And Morris was a pre-trial detention, pre-conviction case. Correct. Is that a distinction that is significant? Your Honor, not a— Or how about this? Why is it that the 8th Amendment analysis would be applicable pre— Well, with respect to the totality, with respect to the mutual enforcing effect, because the circumstances are somewhat the same, and by that I mean this. If in the context of a convicted person under the 8th Amendment, you can't simply take everything and sort of pour it into a jar and see if it rises to a level of this is— In the context of the 14th Amendment, I couldn't find any prudential reason that there would be some difference that suddenly a pre-trial detainee could simply take these things and put them together. And the danger with respect to that is that you began to say, well, this condition applies to this need. That condition applies to that need. Maybe they each individually don't come up, but they're separate needs, and you're going to somehow coalesce those into one point of trying to determine it's unconstitutional. That type of circumstance in just the thought process is that type of circumstance would simply create a—it would be difficult from a workability standpoint, but it would also seem to be fraught with the opportunity for there to be a lack of guidance, if you will, to the prison officials out there. So, Judge, there's not another case that I've identified that says and addresses that point specifically. The only case that we really have that we found was Witnack that addressed that. Why Morris didn't? To me, the simplest answer is that the parties simply did not raise it, and the conditions there were very combined and discreet of being in this cage for this period of time, and it seemed to be the same singular need that was an issue in that case. What was the need? The need to be put in such a position that he was not required to climb into a cage and cause injury to himself by being in that cage for an hour and a half in those filthy conditions. It's kind of a combination, isn't it? Your Honor, certainly in the—well, in the discussion, it was discussed altogether, and it was not divided out, and that is unfortunate. Well, my only point, it's kind of hard to talk about Morris without talking about the totality of it because it's really hard to break down what the individual needs are. You know, Your Honor, I haven't thought of—I've thought of that point, but I've not thought of it in this particular way, and that is, with respect to Morris, placing him in the cage is what caused him to have and to complain of this ongoing neck or back pain, whatever it was, that he had in that circumstance. And so one has to wonder if it would have gotten to that point. It seemed like the hair and the feces were— a great way to end the argument is talk about those subjects, but it seems that those points were ones that certainly added to the distastefulness of the entire circumstance. Unless there are additional questions, we would simply ask the Court to affirm the decision of the District Court. Thank you. Thank you. Mr. Marion. Thank you, Your Honors. I just have a few points. One, Mr. Mayfield suggested there's a subjective component to the standard that should be applied, and there is to some extent, because we don't constitutionalize negligence per se, so the intention that's required is that the acts that are being judged be done intentionally, not necessarily maliciously or with intent to cause harm. The Wittnack case is a 1994 case, and it predated a lot of developments in jurisprudence and the Court's thinking in these matters, particularly the distinction between standards that should be applicable to pretrial versus prisoners. And, of course, in Smith v. Copeland, the Court did note that pretrial detainees have a lighter burden to carry when challenging their circumstances. But finally, Mr. Mayfield asks, why should a pretrial detainee's condition of confinement be judged by a different standard? Well, the answer to that is clear, that that person is presumed innocent, is not supposed to be punished at all, and it's supposed to be the least restrictive means that will otherwise satisfy the legitimate governmental needs and goals. So that's the distinction, and Mr. Starnes was, in fact, a pretrial detainee. Thank you, Your Honors. Thank you. Thank counsel for your argument and your briefing, and we'll issue an opinion in due course.